IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARELLE LODER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 2:11-CV-979-WKW [WO] |
| ) | |
| REESE MCKINNEY, JR., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This case is brought by several individuals who challenge Defendant Probate Judge Reese McKinney's marriage license policy. Plaintiffs contend that the policy requires applicants to present proof of legal residence in the United States and a valid Social Security card in order to receive a marriage license. Plaintiffs allege that this denies the right of marriage to certain non-citizens and to United States citizens whose intended spouse is unable to provide the required documentation. Plaintiffs seek prospective relief through 42 U.S.C. § 1983 for denial of their Fourteenth Amendment rights to substantive due process and equal protection. Defendant has moved to dismiss the complaint, alleging that Plaintiffs do not have standing to challenge the policy. The case is pending on Defendant's Motion to Dismiss (Doc. # 19), which is opposed (Doc. # 24). Defendant has replied (Doc. # 26). The motion has been fully briefed and is ready for resolution. After careful consideration of the

parties' briefs, arguments, and the applicable law, the Motion to Dismiss is due to be denied.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, and 2201–02. Personal jurisdiction and venue are not contested, and there are adequate allegations in support of both.

## II. STANDARD OF REVIEW

Defendant challenges the court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Plaintiffs do not have standing to challenge his policy regarding marriage licenses. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction asserts either a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 20, 1981)[1]); *accord Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Defendant has made a facial attack on the Complaint, asserting that Plaintiffs have not alleged an adequate basis for subject matter jurisdiction because they lack standing to challenge his policy. *See Fla. Ass'n of*

---

[1] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

*Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1227 n.14 (11th Cir. 2000) (noting that standing "raises an even more basic question of jurisdiction that cannot be waived and goes to the very heart of the 'case or controversy' requirement of Article III").

A facial attack challenges the complaint on its face and "require[s] the court merely to look [to] see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529). In deciding a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), courts must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See, e.g., Kendall v. Thaxton Rd. LLC*, No. 10-14634, 2011 WL 3903400, at *3 (11th Cir. Sept. 7, 2011) (unpublished); *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 & n.21 (1982) (distinguishing between the motion to dismiss stage, at which well-pleaded allegations establishing injury in fact, causation, and redressability suffice, and a plaintiff's burden of proof at trial). The Supreme Court of the United States has said in the context of a standing determination that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *United States v. Baxter Int'l, Inc.*, 345 F.3d

866, 881 (11th Cir. 2003) (quoting *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994)).

### III. BACKGROUND

In Alabama, no person may formally marry without a license. Ala. Code § 30-1-9. Alabama Code § 22-9A-17 requires the probate judge to prepare and forward a completed marriage license form to the Bureau of Vital Statistics. The probate judge must complete the marriage license "upon the basis of information obtained from the parties to be married." Ala. Code § 22-9A-17(b).

The Complaint alleges that as Probate Judge of Montgomery County, Defendant has adopted and implemented a marriage licensing policy that states in relevant part: "Non-citizens of the United States must provide proof of legal presence in the United States in the form of valid immigration documents or passport." (Doc. # 1 ("Compl.") at 11–12.) Neither the Code of Alabama nor the Alabama Constitution requires applicants to provide proof of legal presence in the United States to secure a marriage license. The Alabama Attorney General has explicitly stated that "a marriage license can be issued to an applicant who is not a United States citizen." (Compl. at 10.)

This lawsuit was filed by couples who reside in Alabama and desire to obtain a license to marry in Montgomery County, but are barred from doing so based on an

inability to provide the required documentation.  Plaintiffs argue that Defendant has adopted a policy that requires applicants for marriage licenses to show proof of legal residence in the United States before they can receive a marriage license.  Plaintiffs allege that they are otherwise qualified to receive a marriage license and intend to be married.  Plaintiffs request to represent a putative class of all persons in Alabama who seek a marriage license, but who cannot receive one based on an inability to provide the documentation required by the probate court.  Plaintiffs seek declaratory and injunctive relief against Defendant for violations of their Fourteenth Amendment rights to due process and equal protection.  In response to the Complaint, Defendant filed the instant Rule 12(b)(1) Motion to Dismiss.

## IV.  DISCUSSION

Defendant makes three arguments in support of his Rule 12(b)(1) Motion to Dismiss, all of which involve Plaintiffs' standing to bring this suit.  First, Defendant contends that the lawsuit should be dismissed because Plaintiffs' characterization of the policy is erroneous.  Defendant urges the court to adopt a reading of the policy that would not require non-citizen applicants to show proof of legal presence in the United States.  Defendant argues that under this reading, Plaintiffs have not been denied the right to marry and, thus, have not been injured and have no standing to challenge the policy. Defendant further contends that Plaintiffs lack standing because

they have not applied for a marriage license in Montgomery County and therefore have not been injured. Finally, Defendant argues that because common-law marriages are recognized in Alabama, Plaintiffs have not suffered an injury in fact.

The requirement of Article III standing is both a constitutional limitation on federal court jurisdiction and a prudential limitation on its exercise. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). This case concerns constitutional standing. Constitutional standing requires that Plaintiffs have a "'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

The test for evaluating constitutional standing includes three elements. First, the plaintiff must have suffered an "injury in fact." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); *see also Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1537 (11th Cir. 1994) (citing *E. F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990)). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). "Second, there must be a causal connection between the injury and the

conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38, 43). The burden is on the party invoking federal jurisdiction to demonstrate each element of standing. *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000).

Plaintiffs have alleged each of the three elements of Article III standing: (1) actual injury, in that they are barred from obtaining a marriage license under Defendant's policy; (2) that their injury is traceable to Defendant's policy; and (3) that their injury would be redressed by the relief requested, namely an injunction against enforcement of Defendant's policy and a declaration that the policy is unenforceable.

**A.     Interpretation of the Policy**

Defendant first argues that Plaintiffs' characterization of the policy is incorrect. (Doc. # 19 at 5.) Defendant claims that his policy does not bar non-citizens who are in the country illegally from obtaining a marriage license. The challenged policy in effect when the Complaint was filed provided as follows:

>    **Non-citizens of the United States must provide proof of legal presence in the United States in the form of valid immigration documents or passport.**
>
>    Each applicant must provide one of the following:
>
>    1.   An official Picture ID (passport, military ID, State issued ID, Driver's License).
>    2.   An original certified copy of the state issued birth certificate (hospital copy not acceptable) <u>and</u> original social security card.
>    3.   U. S. Government issued Immigration Services Picture ID Card (green card, visa, alien resident card, etc.).

(Compl. ¶ 44 (emphasis added); *see also* Compl., Ex. A (printout of policy on Def.'s website, dated Nov. 17, 2011).)

Notwithstanding the word "must" in the first paragraph of the policy, Defendant asserts that the policy does not require non-citizens to provide proof of legal presence in the United States.[2]  (Doc. # 19 at 6.)  Defendant claims that the requirement set forth in paragraph one may be disregarded if the applicant satisfies paragraph two with any form of identification that would fall within one of the enumerated categories.  (Doc. # 19 at 6–7.)

While Defendant seems utterly sincere in his reading of his own policy, for his interpretation to control, the entire first paragraph would be rendered superfluous. In other words, there would be absolutely no purpose to the first paragraph if an

---

[2] The bolded sentence of the policy will be referred to as "paragraph one," and the remainder of the policy will be referred to as "paragraph two."

applicant merely had to satisfy the second paragraph. Nor does the policy contain any language in the second paragraph that creates a condition to avoid the requirement of proof of legal presence in the United States or that serves as an alternative means of satisfying the requirements in the first paragraph. Indeed, the second paragraph imposes additional requirements of what kinds of acceptable identification are required for the issuance of a license.

"It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted); *see also Gonzales v. McNary*, 980 F.2d 1418, 1420 (11th Cir. 1993) ("A statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant."). While Defendant's policy is not a state statute, the court deems it appropriate to construe the policy according to this recognized principle of statutory construction, absent any contrary argument or authority having been offered by the parties.

The second paragraph of the policy is not redundant of the first paragraph because the second paragraph applies to all applicants, while the first paragraph applies to non-citizen applicants. There is nothing inconsistent between the first and

second paragraphs. The second paragraph requires applicants to provide proof of their identity through at least one document that reflects lawful immigration status, a requirement that is wholly consistent with paragraph one's legal presence mandate. Giving the first paragraph of the policy its full and plain meaning, that non-citizens must show proof of legal presence, is entirely consistent with the second paragraph. The second paragraph of the policy imposes additional, not alternative, requirements and explains what forms of identification are sufficient for applicants. There is no reason to read the second paragraph of the policy as altering the express requirement for non-citizens of the United States to provide proof of legal presence in the United States in the form of valid immigration documents or passport. Defendant's argument cannot stand against the plain language of the policy and must be rejected.

Finally, Defendant asserts that the Plaintiffs who are not United States citizens have identification that would satisfy the marriage license requirements. But speculation about an ambiguous reference to an Alabama Resident Identification Card held by one of the Plaintiffs, which Defendant argues might be sufficient to demonstrate legal presence in the United States, would require analyzing documents and evidence outside of the complaint, and is not appropriate on a Rule 12(b)(1) facial attack. Plaintiffs have sufficiently pled that the policy bars certain non-citizens from successfully securing a marriage license.

**B.     Actual Injury and Futility**

Defendant also seeks to dismiss the Complaint because Plaintiffs have not applied and been rejected for a marriage license in Montgomery County. But "[c]ourts have long recognized circumstances in which a failure to apply may be overcome by facts which demonstrate the futility of such application." *Terry v. Cook*, 866 F.2d 373, 378 (11th Cir. 1989); *see also LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005) (noting that "strict adherence to the standing doctrine may be excused when a policy's flat prohibition would render submission futile"); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."); *Long v. Aronov Realty Mgmt.*, 645 F. Supp. 2d 1008, 1025 n.35 (M.D. Ala. 2009) (recognizing the futile gesture doctrine in the context of employment and housing discrimination).

Here, the Complaint has adequately pleaded facts which demonstrate the futility of Plaintiffs' applications for marriage licenses. Each Plaintiff has pleaded that at least one member of the couple is a non-citizen and cannot provide proof of legal presence in the United States. All Plaintiffs have pled that, but for Defendant's policy, they would obtain a marriage license from Montgomery County and get

married. The policy requires that "[n]on-citizens of the United States must provide proof of legal presence in the United States in the form of valid immigration documents or passport." Because of the use of the word "must" and Plaintiffs' allegations that they lack the required documentation, the policy facially prevents Plaintiffs from obtaining a marriage license. Under the doctrine of futility, a plaintiff need not have applied for a right if the defendant's policy would have made such a gesture futile or even if the policy merely discouraged the plaintiff from applying. *Terry*, 866 F.2d at 378; *Long*, 645 F. Supp. 2d at 1025. Based on the plain reading of Defendant's policy, and the reading most favorable to Plaintiffs as non-moving parties, Plaintiffs adequately have pleaded that applying for marriage licenses would have been a futile gesture and have sufficiently demonstrated that the failure to apply should be properly excused.

C.   **Common Law Marriage and Injury in Fact**

Defendant argues that Plaintiffs have not suffered an injury in fact because the affected couples could simply enter into a common-law marriage. Defendant contends that once the evidentiary requirements of establishing a common-law marriage are satisfied, a common-law marriage has "all the rights, and [is] subject to all the duties, flowing from a marriage in strict conformity to the statute." *Piel v. Brown*, 361 So. 2d 90, 93 (Ala. 1978). Defendant is correct that a common-law

marriage is equivalent in bare validity to a solemnized, licensed marriage. However, Defendant's argument fails to address meaningfully the authorities raised by Plaintiffs regarding the injuries that result from being unable to pursue a solemnized marriage through the licensing process.

Denial of a permit or a license pursuant to a state or federal administrative scheme is an Article III injury. *See Parker v. District of Columbia*, 478 F.3d 370, 376 (D.C. Cir. 2007), *aff'd sub nom District of Columbia v. Heller*, 554 U.S. 570 (2008). The law is clear that plaintiffs affected by a discriminatory policy have suffered an injury in fact sufficient to confer standing, despite the ability to overcome the challenged barrier. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009). The relevant inquiry on standing is whether Plaintiffs have suffered unlawful treatment under Defendant's policy, not whether the unlawful treatment is insurmountable or the benefit can be realized through alternative means. As the Supreme Court of the United States has explained,

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing.

*Ne. Fla. Chapter of Ass'n Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). The injury in fact is the "denial of equal treatment resulting

from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.*; *see also Common Cause/Georgia*, 554 F.3d at 1351 ("For purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier[.]"); *Virdi v. Dekalb Cnty. Sch. Dist.*, 216 F. App'x 867, 872 (11th Cir. 2007) (noting that the injury caused by discrimination is not the inability to obtain the sought-after benefit, "but rather the barrier set up by the illicit condition"). For purposes of standing, a plaintiff need only adequately allege that the challenged policy or act creates an unlawful barrier, not that the barrier is insurmountable. Plaintiffs have succeeded in passing that threshold.

Additionally, common-law marriage does not enjoy the same presumption of validity, and consequently the same level of certainty to the parties, as a solemnized marriage. A solemnized marriage enjoys a "strong presumption [that] immediately arises in favor of its validity," *Fuquay v. State*, 114 So. 892, 894 (Ala. Ct. App. 1927), *rev'd on other grounds*, 114 So. 898 (Ala. 1927), but "[t]here is no presumption in favor of a common-law marriage." *Id.* at 893. Instead of enjoying the presumption of validity, parties seeking recognition of their common-law marriage or who find their common-law marriage challenged must provide "clear and convincing" evidence of their marriage. *See, e.g., Lofton v. Estate of Weaver*, 611 So. 2d 335, 336 (Ala. 1992). The Alabama Supreme Court has warned that "[c]ourts of this state closely

scrutinize claims of common law marriage and require clear and convincing proof thereof." *Id.* (quoting *Baker v. Townsend*, 484 So. 2d 1097, 1098 (Ala. Civ. App. 1986)); *see also Reese v. Holston*, 67 So. 3d 109, 112 (Ala. Civ. App. 2011) (rejecting claim of common-law marriage where the evidence was "insufficient to show by clear and convincing evidence that the parties' relationship" met the required common law elements). The differences between the elements of proof deny Plaintiffs a real and tangible benefit: the additional security that arises from the presumption of validity that attaches to a solemnized marriage.

Finally, Defendant admits that the inability to secure a marriage license prevents solemnization of the marriage. (*See* Doc. # 19 at 10); *see also* Ala. Code § 30-1-9 ("No marriage shall be solemnized without a license."). This has the effect of denying Plaintiffs a wedding ceremony performed by an officiant. Weddings can, and very often do, hold great levels of religious and personal significance for couples and their families. Common-law marriage provides no alternative avenue for a traditional wedding. In fact, without a license, conducting a wedding is against the law. The policy denies certain non-citizen individuals the ability to take marriage vows legally in a house of worship, in front of friends, family, an officiant, and God. Common-law marriage offers no alternative to being able to legally experience one of the most important events in the lives of many people.

On the Complaint's allegations, Plaintiffs have demonstrated that they have suffered an injury in fact based upon Defendant's policy that bars them from obtaining marriage licenses. Common-law marriage does not negate that injury in fact.

## V. CONCLUSION

For the foregoing reasons, the court finds that Plaintiffs have standing to proceed on their claims challenging the constitutionality of Defendant's policy that precludes non-citizens without proof of legal presence in the United States from obtaining a marriage license. Accordingly, it is ORDERED that Defendant's Rule 12(b)(1) Motion to Dismiss (Doc. # 19) is DENIED.

DONE this 13th day of September, 2012.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE